IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK ANTHONY, | : | CIVIL ACTION NO. 1:23-CV-2041 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| DAS COMPANIES, INC., | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM

Most employment relationships in the United States are "at-will." This means an employer may terminate an employee at any time, for any reason, so long as that reason is not illegal. The reason for termination does not have to be fair, it does not have to make sense; it just cannot be illegal. Plaintiff Mark Anthony claims his former employer, defendant DAS Companies, Inc., fired him in August 2022 for illegal reasons—his age and disability.

He then filed this lawsuit, alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and both age and disability discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et *seq*. In response, DAS has filed a motion for summary judgment. Even when taking the evidence in the light most favorable to Anthony, the evidence shows DAS had non-discriminatory reasons for terminating his employment and Anthony cannot prove

these reasons were non-credible or pretextual. As such, its motion for summary judgment will be granted.

## I. Factual Background & Procedural History[1]

DAS is a company that designs, imports, and distributes automotive supplies, travel gear, and mobile electronics to travel centers and convenience stores. (Doc. 17 ¶ 9; Doc. 19 ¶ 9). The company was founded by David Abel, (Doc. 44-2 (hereinafter "D. Abel Dep.") 12:25-16:6), and he served as CEO of DAS until 2008, (Doc. 34 ¶ 1). At that time, Abel tapped his brother Michael to take over as CEO while he stepped back into an advisory role. (Doc. 34 ¶¶ 1-2).

DAS hired Anthony in July 2019 to serve as the Director of Purchasing, General Merchandise. (Id. ¶ 4). In that role, he supervised a number of employees and had category manager duties for 4 different categories within the company. (Id.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id.

Anthony failed to follow this court's local rules by including additional paragraphs in his responsive statement of facts. See M.D. PA. L.R. 56.1; (Doc. 41 at ECF 1-6). The court therefore disregards these non-compliant additional paragraphs. See Weitzner, 909 F.3d at 613-14; Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, No. CV 2:14-3362, 2018 WL 585541, at *3 (D.N.J. Jan. 29, 2018) ("disregard[ing] all statements that do not conform to Rule 56 and Local 56.1.").

Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 34, 43). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

¶ 6). After November 1, 2021, Anthony reported to Vice President of Purchasing, Tyler Scherner. (Id. ¶ 7). A month later, Anthony told Scherner about his Parkinson's disease. (Id. ¶ 50). Due to his Parkinson's, Anthony experienced tremors in both of his hands during the course of his employment. (Id. ¶ 47). Throughout his employment, a few company employees did ask Anthony about the tremors in his hands, (Doc. 44-10, hereinafter ("Anthony Dep.") 32:1-38:23), but Anthony never heard anyone make any sort of negative or funny comment about his condition. (Id. 45:16-46:7). Additionally, Anthony never heard a single DAS employee make any negative comments about his age, nor did he ever hear Abel say anything negative about any person's age. (Id. 155:16-156:7).

In April 2022, after discussing the company's 2021 year-end financials with the advisory board of directors, Abel learned that there had been a drop in the company's profit. (Doc. 34 ¶¶ 8-9). He then "dug in" to determine what caused the change in the company's financial situation, eventually laying blame at "a lack of control of purchasing in the purchasing department." (D. Abel Dep. 25:17-26:15). To help right the situation, Abel returned to being the company's president and CEO at the end of June 2022. (Doc. 34 ¶ 23). It was around this same time that Wendy Stoviak, Vice President of Human Resources, resigned from the company. (Doc. 44-4 11:13-18). Up to and including her departure, Stoviak was unaware of any significant restructuring efforts being planned by DAS or Abel. (Id. 21:12-22).

Regardless of who was told about his plans, it is clear Abel swiftly began remaking his company when he returned as CEO. For example, he eliminated an

3

innovation lab at DAS, which included eliminating the position of Colin Deery, then 26. (Doc. 34 ¶¶ 40, 63). Abel also wanted category managers reporting directly to Scherner, rather than have people like Anthony serve as intermediaries. (D. Abel Dep. 127:2-25). He therefore reviewed the performance of the category managers to see who would stay on at DAS post restructuring. (D. Abel Dep. 80:8-81:24). He said it was both Anthony's performance and his desire to restructure the company that lead to Anthony's termination.[2] (D. Abel Dep. 99:12-25). Abel terminated Anthony's employment with DAS on August 5, 2022. (Doc. 34 ¶ 29). He also terminated Joe Mango, then 67, and Amber Coletti, then 32, on the same day. (Id. ¶¶ 33, 66-67). Abel also eliminated the quarterly bonus program around the same time. (Id. ¶ 38). A few months later, he also fired Jordan Wormley, then 30, and Ian Worrall, then 40. (Id. ¶¶ 36, 64-65).

Neither party has pointed to anything in the record suggesting any terminated employee, besides Anthony, had a disability or other condition. Also, months after he had been terminated, Anthony claims Scherner told him that prior to his firing, Abel had asked Scherner whether "the guy next door to you [sic] the one with the shaking?" (Anthony Dep. 47:18-48:25). Anthony would later file this

---

[2] True, at one point during his deposition, Abel says it was "one hundred percent" Anthony's "job performance and lack of communication" which resulted in his termination. (D. Abel Dep. 78:11-18). Yet, at least three other times during his deposition, Abel said Anthony's role was eliminated. (Id. 67:12-23; 86:15-18; 99:12-25). Taken as a whole, it is clear Abel's testimony is that there were many positions being eliminated, and Anthony was not transferred to another role due to perceived performance issues.

lawsuit against DAS. Discovery and briefing on DAS's motion for summary judgment are completed and this matter is ripe for disposition.

## II. Legal Standards

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of

5

an element essential to that party's case *on which that party will bear the burden of proof at trial.*" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). Local Rule of Court 56.1 undergirds these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of

the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. Local Rule 56.1 further requires the nonmovant to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id.

This court has wide discretion to sanction noncompliance with local rules, including Local Rule 56.1, which serves the important purpose of organizing the summary judgment record and facilitating efficient disposition of Rule 56 motions. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613-14 (3d Cir. 2018). Permissible sanctions for failure to strictly comply with Local Rule 56.1 include striking nonresponsive statements of fact or deeming a moving party's statement to be unopposed when not properly controverted. See id.; see also FED. R. CIV. P. 56(e); M.D. PA. L.R. 56.1. In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

## III. Discussion

Both parties agree, as they must, that the claims in this case are governed by the burden-shifting framework set forth by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] (Doc. 36 at 10; Doc. 42 at 20). The first step of this three-part

---

[3] Anthony's PHRA claims are coterminous with his federal ones. Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220 n.21 (3d Cir. 2024) (citations omitted) ("[F]ederal courts should continue to interpret the PHRA in harmony with the ADA."); Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015) (citations omitted) ("[T]he interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA.").

framework is for a plaintiff to establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If such a case is established, the burden then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reasons for the [adverse employment action]." Id. at 803. If an employer satisfies this "relatively light" burden, Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir. 2006)), the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

A plaintiff succeeds on the first test by showing "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644-45 (3d Cir. 2015) (quoting Burton, 707 F.3d at 765). To prevail on the second test, a plaintiff can show that: "(1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." Id. at 645 (citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)).

8

The court shall assume, without deciding, Anthony has established a prima facie case of age discrimination. Anthony further does not dispute that DAS has proffered legitimate, nondiscriminatory reasons for his termination. (Doc. 42 at 20-21). The question now is whether DAS's reasons for terminating him were pretextual.

The record is clear that Abel conducted a company-wide restructuring with far-reaching effects. Many employees were laid off. Some of those, like Anthony, were over the age of 40. (Doc. 34 ¶ 67; Doc. 43 ¶ 68). Others, were younger than 40.[4] (Doc. 34 ¶¶ 63-66). Among those younger employees was Wormley, who Anthony argues were slated to be promoted over him. (Doc. 43 ¶ 30). Thus, in Anthony's telling of this story, DAS discriminated against him based on his age to, in part, promote two younger employees only to fire those younger employees not even 90 days later.

This claim does not survive summary judgment. True, simply because a company fired a younger employee contemporaneously with an older one does not mean age discrimination did not occur. At this stage of the analysis, however, Anthony bears the burden of pointing to evidence showing DAS's given reasons for his termination are either non-credible or pretextual. But Anthony never addresses or in any way tries to explain why the terminations of these younger employees occurred. The company claims it was conducting a major restructuring and to prove it, DAS has shown several employees—of all ages—were terminated. Anthony's

---

[4] Or, in the case of Worrall, exactly 40 in 2022. (Doc. 34 ¶ 65).

9

answer to this is to simply ignore the firings of the younger employees. But considering all the evidence in the light most favorable to Anthony is different from consideringly *only* the evidence favorable to him. The evidence provided by DAS shows it was indeed undergoing a significant restructuring, and Anthony has offered no evidence that would convince a factfinder this restructuring was mere pretext to fire older employees.

Instead, Anthony's attempts to establish pretext amount to making mountains out of molehills. He argues a juror could rely on Stoviak's testimony of being unaware of any looming restructuring plans to make a finding of pretext. (Doc. 42 at 25). Yet Stoviak resigned right as Abel stepped back in as CEO. (Doc. 34 ¶ 23; Doc. 44-4 11:13-18). This means she was not at the company when the mass layoffs occurred. Her testimony also fails to explain why several younger employees were laid off along with older ones. Therefore, her testimony does not provide evidence of pretext.

Anthony additionally argues DAS was actually growing, rather than facing economic headwinds, when the company terminated him. (Doc. 42 at 25). Again, this argument fails to reckon with the fact that several employees—of all ages— were in fact terminated. (Doc. 34 ¶¶ 63-64, 66). It is well-established "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (quoting Carson v. Bethlehem Steel Corp., 82 F.3d

157, 159 (7th Cir.1996)). Whether Abel was correct in conducting a restructuring is irrelevant; he decided he needed to reduce DAS's headcount, and the undisputed record confirms significant layoffs. As such, no reasonable jury could find DAS's given reason for terminating Anthony's employment as pretextual.

As a final point, the cases Anthony cites in support of his position are inapposite. Porter v. Merakey USA, is distinguishable as in that case, the defendant company outright lied to the Equal Opportunity Employment Commission that no one had been hired for the role at issue. No. 22-2986, 2024 WL 3581169 at *3 (3d Cir. July 30, 2024). There is no similar allegation here of DAS lying to the EEOC, nor does Anthony contest DAS's statements on which roles have been left vacant. Further, in that case, the defendant company hired a non-disabled employee over the plaintiff. Id. at 1. Here, DAS fired several employees, some over the age of 40 and others younger. Hanafy v. Hill International, Inc. is equally unavailing. 669 F.Supp.3d 419 (W.D. Pa. 2023). There, a company did claim restructuring was the reason for the termination of the plaintiff, but only 2 employees were fired, and both were on medical leave at the time of firing. Id. at 443. The sheer number of employees fired here, in a variety of roles and ages, distinguishes Hanafy from the present case.

Finally, Anthony's disability claims fair no better than his age discrimination claims. DAS can and does use all the above arguments in the disability context and they are persuasive—DAS terminated Anthony in connection with a restructuring. His claims in the disability context are even weaker as, based on the record,

Anthony appears to be the only terminated employee with a disability. And even Anthony admits no employees, nor any decision makers, ever made any negative or joking comments about his disability. (Doc. 33-7 44:5-46-7). His only evidence of pretext is mere temporal proximity of when DAS learned about his Parkinson's diagnosis and his termination, along with one potential comment about his disease from Abel. (Doc. 42 at 30-32).

     Starting with the latter, it appears not even Anthony believes a comment about his hands shaking is an insult or a negative slight. (See, e.g., Anthony Dep. 38:4-23). Abel asking if Anthony is "the one with the shaking," even in the light most favorable to Anthony, does not create a dispute of material fact. There is no evidence this statement was malicious or discriminatory and so it does not support a finding of pretext. As for temporal proximity, Anthony focuses on when Scherner learned of his Parkinson's diagnosis. (Doc. 42 at 31-32). Crucially, however, it was *Abel* who fired Anthony. (Doc. 44-8, Scicchitano Deposition, 87:15-18). Anthony has shown no evidence of when Abel learned of his Parkinson's diagnosis, much less anything to establish a causal connection. More fatally, any attempt to create a dispute of material fact over temporal proximately fails to explain why several non-disabled employees were also laid off at the same time as Anthony. Even if there were a temporal connection, it would fail to create a claim of pretext in this case.

IV. <u>Conclusion</u>

In mid-2022, Abel decided major change was needed at DAS and instituted layoffs. Maybe that decision was short-sighted, maybe he was too quick to fire employees. Regardless, as the CEO company, Abel is allowed to make personnel changes for any reason that is not illegal. Reviewing the record before it, the court concludes no jury could find Abel and DAS fired Anthony for an illegal reason. Accordingly, DAS's motion for summary judgment will be granted.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   December 10th, 2025